IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CONSOLIDATION COAL COMPANY,

    Plaintiff,

v.                                         Civil Action No. 1:09CV11
                                                          (STAMP)
UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION and
LOCAL 9909, UNITED MINE WORKERS OF AMERICA,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
ENFORCING THE ARBITRATION AWARD AND
DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES**

I.   Procedural History

The plaintiff in the above-styled civil action, Consolidation Coal Company ("Consol"), filed a complaint in this Court against United Mine Workers of America, International Union and Local 9909, United Mine Workers of America pursuant to the Labor-Management Relations Act to vacate a labor arbitration award. The defendants filed a counter-claim asking for specific enforcement of the arbitration award and for attorneys' fees. Thereafter, the parties filed cross motions for summary judgment. These motions are now fully briefed and ripe for review. For the reasons set forth below, this Court grants the defendants' motion for summary judgment and denies the plaintiff's motion for summary judgment. Accordingly, this Court orders that the arbitration award be

enforced.  Finally, this Court declines to award attorneys' fees to the defendants.

## II. Facts

Consol and the defendants entered into a collective bargaining agreement, the National Bituminous Coal Wage Agreement ("CBA"). Thereafter, the parties negotiated Rules Concerning Drugs and Alcohol for Loveridge Mine ("Rules").  The CBA provides that no employee may be discharged except for "just cause."  The CBA further provides that the arbitrator's decision shall be final.

Mine workers in West Virginia are not allowed to "carry into any mine any intoxicants or enter any mine while under the influence of intoxicants."  W. Va. Code § 22A-2-57(c).  Rudy Anthony ("Anthony") has worked for the plaintiff or the plaintiff's affiliates since 1979, holding such positions as foreman and crew leader.  On December 8, 2008, Consol selected Anthony for a drug test pursuant to its random testing procedures.  Anthony tested positive for marijuana metabolites.  Consol then suspended Anthony with intent to discharge.  The parties went to arbitration.  On January 9, 2009, using "Arbitrator Daughtery's . . . seven tests of just cause," Arbitrator Cynthia Stanley found that Consol did not have just cause to dismiss Anthony because Consol did not show that the decision to discharge was made with Anthony's record in mind. The arbitrator ordered that Consol "reinstate Anthony immediately, without back pay, but in every other way to make him whole."

Consol then brought suit in this Court to have the award vacated, arguing that the arbitrator failed to stay within the contractual borders of her authority.

III. <u>Applicable Law</u>

A. <u>Summary Judgment</u>

Under Federal Rule of Civil Procedure ("Rule") 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether

there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.  <u>Review of Arbitration Awards</u>

Judicial review of arbitration awards is "among the narrowest known to the law." <u>PPG Indus. v. Int'l Chem. Workers</u>, 587 F.3d 648, 652 (4th Cir. 2009) (internal citations omitted). Federal courts presumptively favor the validity of arbitration awards. <u>Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union</u>, 76 F.3d 606, 608 (4th Cir. 1996). The parties to a collective bargaining agreement "bargained for the arbitrator's interpretation and resolution of their dispute." <u>Id.</u> A reviewing court generally defers to the arbitrator's reasoning in a labor arbitration case and should never overturn an arbitrator's findings absent fraud by the parties or dishonesty by the arbitrator. <u>Id.</u> This court determines whether the arbitrator did her job, "not whether [she] did it well, correctly, or reasonably, but simply whether [she] did it." <u>Id.</u> To determine whether the arbitrator did her job, this Court examines: "(1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits." <u>Id.</u>

Despite this narrow review, arbitration awards may be overturned where the "award violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's own notions of right and wrong." <u>Id.</u> Therefore, an "arbitrator cannot 'ignore

5

the plain language of the contract' to impose his 'own notions of industrial justice.'" PPG Indus., 587 F.3d at 652 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)). However, arbitrators need not provide any rationale for an award. Id. This Court will not refuse to enforce an award for "mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority." Id. (citing United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)). Accordingly, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38.

This Court must also decide "whether a contractual reinstatement requirement would fall within the legal exception that makes unenforceable 'a collective-bargaining agreement that is contrary to public policy.'" E. Associated Coal Corp. v. United Mine Workers of Am, Dist. 17, 531 U.S. 57, 62 (2000) (citing W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766 (1983)). Such a public policy "must be explicit, well defined, and dominant." Id. (internal citations omitted). In a case such as this, the question before this Court is not whether Anthony's drug use itself violates public policy, but whether the CBA provision relating to reinstatement does so. Id.

## IV. Discussion

### A. Cross Motions for Summary Judgment

As discussed above, this Court first looks to whether the arbitrator did her job. To do this, this Court looks to: (1) the arbitrator's role in the CBA; (2) whether the arbitrator ignored the plain language of the CBA; and (3) whether the arbitrator comported with the essence of the limits of the CBA. Mountaineer Gas, 76 F.3d at 608. Article XXIV, Section (a) provides that "[n]o employee covered by this Agreement may be disciplined or discharged except for just cause. The burden shall be on the Employer to establish grounds for discharge in all proceedings under this Agreement." Article XXIV, Section (d)(3) states that "[i]f the arbitrator determines that the Employer has failed to establish just cause for the Employee's discharge, the Employee shall be immediately reinstated to his job. If the arbitrator determines that there was just cause for the discharge, the discharge shall become effective upon the date of the arbitrator's decision." Article XXIII, Section (c)(4) of the CBA provides that "[t]he arbitrator's decision shall be final and shall govern only the dispute before [her]." Therefore, under the CBA, Consol has the burden to show just cause for termination. The arbitrator determines whether there was just cause for the discharge and her determination is final.

This Court next turns to whether the arbitrator ignored the plain language of the CBA. The Rules state in Section I that "[a]n employee is prohibited from reporting for work, working, or coming onto Company work locations at any time after **having used drugs** or while **impaired by drugs."** (emphasis in original). Section IV of the Rules provide that "[a]n employee who engages in any of the prohibited conduct set forth in Section I of these Rules will be subject to disciplinary action up to and including discharge." Further, as discussed above, the CBA provides that an employee will only be discharged upon a finding of just cause by the arbitrator.

Consol contends that the arbitrator strayed from the plain language of the CBA. Consol believes that the language of the CBA is clear and unambiguous and that the arbitrator should not have consulted an outside source for the meaning of just cause. Consol further argues that the parties negotiated the issue and have already agreed that any violation of the Rules or any positive test result for drugs or alcohol is just cause for disciplinary action, including discharge. Finally, Consol believes that there is no language in the CBA limiting its authority to determine just cause for termination in this case.

This Court cannot conclude that the arbitrator ignored the plain language of the CBA. The CBA does not define "just cause." Where the CBA does not address certain issues, the arbitrator has to address them through interpretation. PPG Indus., 587 F.3d at

8

653. No where does the CBA impose mandatory discharge for employee drug use. The Rules do state that drug use will result in discipline, up to and including discharge. Unlike the collective bargaining agreement in Mountaineer Gas, the agreement in this case does not mandate discharge as a result of drug use. Rather, the CBA states that drug use results in a penalty up to and including discharge. The CBA states that discharge will not occur without just cause. The CBA does not define that term. Instead, the CBA leaves that decision to the arbitrator. The arbitrator's decision was consistent with the parties' general intent as manifested in the agreement itself and does not contradict "any clearly expressed limitation." Id.

As in PPG Industries, Consol's arguments about the plain language and whether the arbitrator comported with the essence of the CBA "constitute an attack on the correctness of the arbitrator's decision." Id. This Court acknowledges that marijuana use is a dangerous activity and that reasonable minds could certainly differ as to the correctness of the arbitrator's decision in this case, but if an arbitrator "'even arguably' construes a CBA, a court must uphold the resulting award." Id. (quoting Misco, 484 U.S. at 38). This Court has no warrant to overturn the arbitrator because she consulted an outside source to define a term without a specific definition in the CBA. As discussed above, an arbitrator does not need to give any reason for

9

her decision. Id. at 652. The plain language of the Rules and CBA provide that an employee may be disciplined, up to and including discharged for drug use; that a discharge requires a finding of just cause by the arbitrator; and that if just cause is not found, the employee must be reinstated. The arbitrator here acted within the scope of her authority by consulting an outside definition of "just cause."[1] Accordingly, this Court finds that the arbitrator did not ignore the plain language of the CBA and comported with the essence of the CBA.

Arbitration awards may be overturned where the "award violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's own notions of right and wrong." Mountaineer Gas, 76 F.3d at 608. A public policy that contravenes an arbitration award must be explicit, well defined, and dominant. E. Associated Coal, 531 U.S. at 62. The question this Court must answer is "does a contractual agreement to reinstate [Anthony] with specific conditions . . . run contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests?" Id. at 63.

---

[1] This Court notes that the arbitrator in Misco used the same seven factors that the arbitrator used in this case. Misco, 484 U.S. at 368 n.5.

West Virginia law states that no person shall bring intoxicants into a mine nor shall a person enter a mine under the influence of intoxicants. W. Va. Code § 22A-2-57(c). While Consol admits that no public policy requires the termination of any employee who tests positive for marijuana usage, Consol argues that termination for marijuana usage is certainly consistent with the public policy favoring mine safety. Importantly, Anthony did not go into the mine intoxicated or with intoxicants. He used the marijuana six days before returning to work while on vacation. Again, while this Court recognizes that reasonable minds can differ as to whether termination or reinstatement was the more appropriate remedy, the arbitrator's award does not condone Anthony's conduct or ignore the risk to public safety that drug use by miners may pose. E. Associated Coal, 531 U.S. at 65. The award punishes Anthony by suspending him without back pay. The award does not violate a specific provision of any law or regulation. Id. at 66; W. Va. Code § 22A-2-57(c). Accordingly, this Court cannot find in any law or legal precedent an explicit, well defined, dominant public policy to which the arbitrator's decision runs contrary. E. Associated Coal, 531 U.S. at 66; Misco, 484 U.S. at 43; W.R. Grace, 461 U.S. at 766.

This Court further finds that the award does not fail to draw its essence from the CBA. The CBA provides that an employee may only be discharged for "just cause." The CBA delegates to the

arbitrator the responsibility for finding just cause. As discussed earlier, at no point does the CBA define "just cause." The arbitrator consulted an outside source to determine the meaning of "just cause." Accordingly, this Court finds that the award does draw its essence from the CBA.

Finally, this Court looks to whether the arbitrator imposed her own notions of right and wrong. Consol contends that the arbitrator informed her decision by personal beliefs outside the four corners of the CBA because: (1) the arbitrator characterized her modified discipline, a three-week suspension, as a stiff penalty; (2) the arbitrator partially based her decision on her perception of the probability that Anthony would not violate the drug policy again; and (3) the arbitrator stated that the decision to discharge Anthony was too harsh.

This Court does not believe that these statements by the arbitrator show an imposition of her own notions of right and wrong. This situation is inapposite to the situation in Mountaineer Gas. As discussed above, the collective bargaining agreement in Mountaineer Gas required that an employee be promptly discharged for a positive drug test. In that case, the arbitrator did not agree with the policy and found that just cause did not exist, thereby "blatantly" ignoring the "unambiguous language" of the company's drug policy. Mountaineer Gas, 76 F.3d at 610. The court found that the words "proper cause" in the CBA could not be

a loophole for the arbitrator to bypass the company's drug policy's mandatory language and "to implement his own brand of industrial justice." Id. That did not happen in this case. Consol and the defendants did not bargain for Consol to have the immediate right of discharge for an employee's drug use. They bargained so that Consol could discipline up to discharge if Consol had just cause to terminate. Accordingly, this Court finds that the arbitrator did not impose her own notions of right and wrong in the award.

Because this Court finds that the arbitrator did her job by abiding by her proper role, following the plain language of the CBA, and comporting with the essence of the limits of the CBA and that the award does not violate well-settled and prevailing public policy, does not fail to draw its essence from the CBA, and does not reflect the arbitrator's own notions of right or wrong, the defendants' motion for summary judgment must be granted, the plaintiff's motion for summary judgment must be denied, and the arbitration award must be enforced.

B. Attorneys' Fees

In their counter-claim, the defendants request that this Court award them attorneys' fees. The defendants argue that the plaintiff failed to abide by the terms of the CBA by bringing this civil action. In reviewing the defendants' claim, the measure for a case such as this, where the challenge relates to "whether an arbitration award 'draws its essence' from the contract," is "the

relatively lenient one of whether [the challenge] has any arguable basis in law." Capitol Cement Corp., v. Cement, Lime, Gypsum, & Allied Workers' Div. Of Int'l Bhd. of Boilermakers, 17 F. Supp. 2d 564, 567 (N.D. W. Va. 1998) (quoting United Food & Commercial Workers, Local 400 v. Marval Poultry Co., Inc., 876 F.2d 346, 351 (4th Cir. 1989)). This Court finds that the defendants' challenge to whether the arbitration award draws its essence from the contract, while not prevailing, has an arguable basis in law. Therefore, the defendants' request for attorneys' fees is denied.

## V. Conclusion

Accordingly, the defendants' motion for summary judgment is hereby GRANTED and the plaintiff's motion for summary judgment is hereby DENIED.  It is ORDERED that the arbitration award be ENFORCED.  The defendants' request for attorneys' fees is DENIED. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:      June 3, 2010

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE